UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHELLE M. HOOKER,

                                 Plaintiff,

                  -vs-                                                         13-CV-81-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                                 Defendant.

_____

APPEARANCES:        JEFFREY E. MARION, ESQ.
                               Law Offices of Jeffrey E. Marion
                               Williamsville, New York
                               Attorney for Plaintiff

                               WILLIAM J. HOCHUL, JR.
                               United States Attorney, Western District of New York
                               (MARY K. ROACH, AUSA, of Counsel)
                               United States Attorney's Office
                               Buffalo, New York
                               Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny entered on April 16, 2014. Item 20.

Plaintiff Michelle Hooker initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review the final determination of the Commissioner of Social

---

[1] At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C. § 405(g). On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure. For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits, as provided for in Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff was born on October 21, 1971 (Tr. 195).[2] She applied for SSI benefits on October 28, 2011, alleging disability due to bipolar syndrome, post-traumatic stress disorder, anxiety, fibromyalgia, heart problems, and degenerative disc disease, with an onset date of July 1, 2011 (Tr. 148). Upon denial of the application at the initial level of agency review (Tr. 76-79), plaintiff requested a hearing which was held on May 17, 2012, before Administrative Law Judge ("ALJ") William E. Straub (Tr. 45-68). Plaintiff appeared and testified at the hearing, and was represented by counsel.

On May 24, 2012, the ALJ issued a decision denying plaintiff's application for Title XVI benefits (Tr. 19-28). Following the five-step sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 416.920(a), the ALJ determined that plaintiff's impairments, while severe, did not meet or medically equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) (Tr. 21-22). The ALJ found that the evidence in the record, including plaintiff's

---

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 9).

testimony and statements regarding the limiting effect of her symptoms and the reports and opinions of consultative and treating medical sources, demonstrated that plaintiff had the residual functional capacity ("RFC") for light work limited to performing simple tasks (defined as "working with objects rather than people") in a low stress environment (defined as "occasional decision making with occasional interaction with co-workers, supervisors and the general public") (Tr. 22-26). Based on her age (39 as of the filing date; 40 at the time of the hearing), education (associate's degree), work experience (past relevant work as a licensed practical nurse), and RFC, and considering the testimony of a vocational expert (Dr. Peter Manti) with regard to the effect plaintiff's limitations would have on the occupational base of unskilled light work, the ALJ determined that a finding of "not disabled" was appropriate under the framework of the Medical-Vocational Guidelines (the "Grids"), Rule 204.00 (Tr. 26-27). See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00.

The ALJ's decision became the Commissioner's final determination on December 14, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-4). Plaintiff then filed this action on January 24, 2013, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and the parties have both moved for judgment on the pleadings under Fed. R. Civ. P. 12(c).

In support of her motion for judgment on the pleadings, plaintiff contends that the case should be remanded to the Commissioner for further proceedings because the ALJ failed to properly evaluate plaintiff's mental RFC, and failed to make reasonable efforts to recontact plaintiff's treating sources to fill in gaps in the record. See Items 11, 18. The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed. See Item 16.

**DISCUSSION**

**I.     Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.  Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). As indicated above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§ 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.

If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and

citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.   The ALJ's Disability Determination

In this case, ALJ Straub found at step one of the five-step sequential evaluation process that plaintiff had not engaged in substantial gainful employment activity since October 7, 2011, the application date (Tr. 21). At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff's mental impairments were "severe" within the meaning of the Regulations (*id.*).

At step three, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of a listed impairment, specifically considering the criteria for mental impairments under Listings 12.04 and 12.06 (Tr. 21-22). To satisfy the criteria of either of these Listings, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

1. Marked restriction of activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

    4.    Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B) (Paragraph "B" criteria).  A claimant can also satisfy the criteria of either Listing by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

    1)    Repeated episodes of decompensation, each of extended duration;

    2)    A residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensate;

    3)    History of one or more years' inability to function outside a highly supportive living arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(C), 12.06(C) (Paragraph "C" criteria).

With regard to Paragraph B criteria, ALJ Straub found that plaintiff had moderate restriction in the activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and "one to two" episodes of decompensation of extended duration (Tr. 22).  The ALJ found no evidence to establish the presence of any of the Paragraph C criteria (*id.*).  Accordingly, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of Listings 12.04 or 12.06.

The ALJ then determined that plaintiff had the RFC for light work,[3] but was limited to performing simple tasks in a "low stress" environment, involving occasional interaction with co-workers, supervisors, and the general public (Tr. 22). In making this assessment, the ALJ found that the medical evidence in the record did not support plaintiff's allegations with respect to the limitations imposed by her mental impairments, relying heavily on the report and opinion of psychologist Gregory Fabiano, Ph.D., who conducted a consultative psychiatric evaluation of plaintiff in December 2011, at the request of the Social Security Administration. (Tr. 26). Dr. Fabiano reported that, on mental status examination, plaintiff was cooperative with an adequate manner of relating; her appearance was appropriate; speech was fluent and clear; thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia; affect was flat; mood was neutral; sensorium was clear; she was oriented to person, place and time; her attention, concentration, and memory skills were all intact; cognitive functioning was average; and insight and judgment were good (Tr. 277-78). In Dr. Fabiano's opinion, plaintiff was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. She could relate adequately with others, but "may not

---

[3]As defined in the Regulations:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

always make appropriate decisions … [and] may have some difficulty appropriately dealing with stress." (Tr. 278). Dr. Fabiano found the results of the mental status examination "to be consistent with psychiatric problems, and this may significantly interfere with [plaintiff]'s ability to function on a daily basis." (Tr. 279).

With regard to the evidence provided by plaintiff's treating sources, the ALJ discussed treatment notes from plaintiff's hospitalization at Erie County Medical Center ("ECMC") from August 15-31, 2011, for "bipolar disorders with psychotic features, manic" (Tr. 24; *see* Tr. 194-205), and handwritten progress notes from Monsignor Carr Institute indicating treatment at various times from March 2009 through November 2011 (Tr. 265-71). The ALJ found that:

> As for the opinion evidence, no treating physician has completed a medical source statement regarding [plaintiff]'s work abilities. There is no evidence of psychiatric treatment subsequent to November 2011. Although [plaintiff] had a hospitalization in August 2011 for mania with psychotic features, she was stabilized on medications.

(Tr. 26). As a result, the ALJ attributed "[s]ignificant weight" to Dr. Fabiano's consultative psychiatric report and opinion, finding it to be consistent with the notes from treating sources. (Tr. 26). The ALJ also adopted in full the findings in the Psychiatric Review Technique Form ("PRTF") completed by State agency review psychologist M. Totin (Tr. 300-01) in making his assessment of plaintiff's limitations and restrictions in the categories identified in the Paragraphs B and C criteria of Listings 12.04 and 12.06 (*see* Tr. 25).

IV.     **Plaintiff's Motion: Failure to Properly Evaluate Mental RFC**

Plaintiff's primary contention in support of her motion is that the ALJ failed to follow the requirements set forth in the Commissioner's Regulations and Rulings pertaining to the

evaluation of RFC in mental disorders.  In this regard, the Regulations provide that, as a general matter:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c).  The Social Security Administration Rulings provide further guidance for adjudicators to follow in making the mental RFC determination.  For example, SSR 85-16 sets forth what evidence the Commissioner should consider when assessing a claimant's mental residual functional capacity, including:

> History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.
>
> Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. …
>
> Quality of daily activities, both in occupational and social spheres....
>
> Ability to sustain activities, interests, and relate to others over a period of time. The frequency, appropriateness, and independence of the activities must also be considered....
>
> Level of intellectual functioning.
>
> Ability to function in a work-like situation.

SSR 85-16, 1985 WL 56855, at *2 (S.S.A. 1985).  Moreover:

> Since treating medical sources often have considerable information about the development and progress of an individual's impairment, as well as

>information about the individual's response to treatment, evidence from treating sources should be given appropriate consideration. On occasion, the report of a current treating source may disclose other sources of medical evidence not previously reported. If so, these sources should be contacted, since it is essential that the medical documentation reflect all available sources, particularly in instances of questionable severity of impairment or inconclusive RFC. When medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain more detailed information. Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC before obtaining evidence from any other source on a consultative basis. However, when treating medical sources cannot provide essential information, consultative examination by a treating or nontreating source may resolve the impairment or RFC issue. Similarly, when the reports from these sources appear to be incomplete, the source should be recontacted to clarify the issues.

*Id.* at *3.

As discussed above, in assessing plaintiff's mental RFC in this case the ALJ placed significant emphasis on the medical source statement in the consultative psychiatric examiner's report, and adopted in full the findings in the reviewing psychologist's PRTF, while noting that the record contained no such evidence from plaintiff's treating sources. The ALJ also reported that, in December 2011, a request was sent to Monsignor Carr Institute (where plaintiff received psychiatric treatment between March 2009 and November 2011) seeking "all reports, exams, testing, treatment and office notes 11/16/11 to present," but the response indicated that there were no treatment records for that period. *See* Tr. 24, 272.

SSR 85-16 affirms the Commissioner's recognition that, as a "bedrock principle of Social Security law …," *Rodriguez ex rel. Silverio v. Barnhart*, 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003), the ALJ is under an affirmative obligation to address evidentiary gaps in the administrative record by recontacting treating sources in order to obtain more

detailed information regarding the existence, nature, and severity of the claimed disability. *See* 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history … [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."); *see also Rosa*, 168 F.3d at 79 (numerous gaps in the administrative record should have prompted ALJ to pursue additional information regarding claimant's medical history); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (because hearing on disability benefits is a non-adversarial proceeding, ALJ has affirmative obligation to develop the administrative record, even when claimant is represented by counsel); *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (ALJ failed to adequately develop the record by seeking updated RFC assessments from claimant's treating sources).  In light of this clearly recognized duty, upon noting that the record contained no opinion evidence from plaintiff's treating sources as to plaintiff's ability to work given the limitations imposed by her mental impairments, the ALJ should have specifically requested this information in his communication with Monsignor Carr Institute, instead of simply seeking updated treatment records (which did not exist).  His failure to adhere to this "bedrock principle" must be viewed as legal error causing the determination to be made on an incomplete record, and the court need not consider whether the ALJ's opinion was supported by substantial evidence.

Accordingly, because the ALJ failed to adequately develop the record in assessing plaintiff's mental residual functional capacity, the court finds that the Commissioner's determination is based on legal error.  The matter is therefore remanded to the Commissioner for further proceedings consistent with this decision and order.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 11) is granted, and the matter is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g).

The Commissioner's motion for judgment on the pleadings (Item 16) is denied.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff, and to close the case.

So ordered.

                                              \s\ John T. Curtin
                                                JOHN T. CURTIN
                                        United States District Judge

Dated: May 14, 2014
p:\pending\2013\13-81.ssa.may5.2014